| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | SOUTHERN DISTRICT OF FLORIDA |
| 2 | **FORT LAUDERDALE** |
| | CASE NO. **17-CR-60050-RNS-4** |
| 3 | |

UNITED STATES OF AMERICA,
               Plaintiff

      vs.                     **November 8, 2017**

SANTOS GONZALES-CAHVEC,
               Defendant.

---

**SENTENCING HEARING**

BEFORE THE HONORABLE **ROBERT N. SCOLA**,

UNITED STATES DISTRICT COURT JUDGE

---

**A P P E A R A N C E S**

FOR THE PLAINTIFF:    **SCOTT BEHNKE**, AUSA
UNITED STATES OF       United States Attorney's Office
AMERICA              500 E. Broward Blvd., 7th Floor
                       Fort Lauderdale, FL 33301
                       (954) 356-7392
                       Scott.behnke@usdoj.gov

FOR **THE DEFENDANT:**   **RICHARD A. MERLINO, JR.**, ESQ
SANTOS GONZALES-CAHVEC Voluck & Merlino PL
                       101 NE Third Avenue, Suite 110
                       Fort Lauderdale, FL 33301
                       (954) 745-7497
                       Richmerlinoesq@yahoo.com

REPORTED BY:       **GIZELLA BAAN-PROULX**, RPR, FCRR
                       United States Court Reporter
                       400 North Miami Avenue, Suite 8S32
                       Miami  FL  33128
                       (305) 523-5294
                       gizella_baan-proulx@flsd.uscourts.gov

<u>P R O C E E D I N G S</u>

*(The following proceedings were held in open court.)*

**THE COURT:**  Good morning, everyone.  Welcome.  Please be seated.

08:37   All right.  Our first matter this morning is United States of America versus Santos Gonzalez Cahvec.  Can you state your appearances, please.

**THE GOVERNMENT:**  Scott Behnke on behalf of the government.  Good morning, Your Honor.

08:37   **THE COURT:**  Good morning.

**THE DEFENSE:**  Good morning, Judge.  Richard Merlino on behalf of Mr. Cahvec who is sitting to my right as well as --

**DEFENSE 2:**  Jared Brown on behalf of Mr. Cahvec.

**THE COURT:**  Good morning.  Good morning, Mr. Cahvec.

08:37   **THE DEFENDANT:**  Yes, I can hear you.

**THE COURT:**  All right.  And who is here on behalf of probation?

**PROBATION:**  Good morning, Your Honor.  Brittany Allen on behalf of the United States probation.

08:38   **THE COURT:**  All right.  Good morning.  This matter is set for sentencing this morning.  Are both sides prepared to go forward with sentencing?

**THE GOVERNMENT:**  Yes, Your Honor.

**THE DEFENSE:**  Yes, Your Honor.

08:38   **THE COURT:**  And has each side received and reviewed

1  the presentence investigation report as revised on November

2  7th?

3          THE GOVERNMENT:  Yes, Your Honor.

4          THE COURT:  As well as the addendum and second

08:38  5  addendum to the report?

6          THE GOVERNMENT:  Yes, Your Honor.

7          THE DEFENSE:  Yes, Your Honor.

8          THE COURT:  Mr. Cahvec, have you gone over the

9  presentence investigation report as well as the addenda with

08:38 10  your attorneys?

11          THE DEFENDANT:  (No answer)

12          THE COURT:  Have you spoken to your attorneys about

13  the report and the addenda to the report?

14          THE DEFENDANT:  Yes.  Right now they're informing me

08:38 15  of this.

16          THE COURT:  All right.  And does either side have any

17  objections to the report?

18          THE GOVERNMENT:  No, not from the government, Your

19  Honor.

08:39 20          THE DEFENSE:  No, sir.

21          THE COURT:  All right.  Since there are no objections

22  to the report, I find the base offense level is a level 38.

23  There's no other adjustments, so the adjusted offense level

24  remains at level 38.  There's no acceptance of responsibility

08:39 25  statement.  Is that his desire is to not accept responsibility

1 still?

2          **THE DEFENSE:**  Your Honor, he stands by his testimony

3 provided to this Court as well as the jury at trial.

4          We did attend the presentence investigation report

08:39   5 interview with this probation officer.  He maintains his

6 innocence and the rendition of facts presented on direct

7 examination at trial.

8          **THE COURT:**  Is that correct, Mr. Cahvec?

9          **THE DEFENDANT:**  Yes, sir.

08:39  10          **THE COURT:**  All right.  So since there's no reduction

11 for the acceptance of responsibility, the total offense level

12 remains at level 38.  He falls within criminal history category

13 1, and an advisory guideline range of 235 to 293 months.

14          So with that as the advisory guideline range, what is

08:40  15 the government's position as to an appropriate sentence for

16 Mr. Cahvec?

17          **THE GOVERNMENT:**  Your Honor, the defendant pled not

18 guilty and demanded a trial by jury.  To this day, he has not

19 accepted responsibility.  He has not provided any statement

08:40  20 concerning his role in the offense.

21          As the Court knows from the facts in this case which

22 was tried before this Court, there was over a ton of cocaine on

23 the boat.  And we know from the evidence in this case that the

24 other two defendants who did cooperate were -- I think the

08:41  25 probation office has assessed them at equal, and I don't

quibble with that other than I will remind the Court that

during their testimony or during the testimony of the

cooperating witness who did testify, Mr. Covejo (ph.), he

indicated that he was told by Mr. Cahvec that Mr. Cahvec's role

08:41   in the case was that he was supposed to guide them into Mexico

to make sure that the drugs got deposited in Mexico, which is a

transient point for deposit into the United States, which the

Court also heard testimony concerning that; and that he

admitted to him that he had done it before, and that he was

08:41 10 going to receive $50,000 for his cooperation, which in my mind

puts him in a category above the two defendants who cooperated

in this case because they were merely individuals who were

going to assist in piloting the boat, so they could spell the

captain who was the navigator and the most culpable in the

08:41 15 case.

        I don't see a big distinction between the captain and

the defendant, Mr. Cahvec.  They both had strategic objectives

other than merely, shall we say, labor on the boat.  Mr. Cahvec

even testified himself that he had no knowledge about how to

08:42 20 navigate the boat; that he was kidnapped.  He would have been

the only one who was kidnapped in an otherwise pool of willing

people who would cooperate to transport narcotics in the hopes

of gaining financial benefit from their assistance in that

effort.  In fact, there's a line of people doing that in those

08:42 25 countries.

08:42

1          The Court will remember that when he was stopped by

2     the Coast Guard, he attempted to hide himself.  He attempted to

3     shield himself.  He attempted to avoid answering the coast

4     guards.  In fact, when he was forced to answer his country of

5     origin, he claimed to be Mexican.  And, in fact, when he

6     realized that all the other passengers, all the other crew

7     members were getting their identifications checked, he knew

8     that the government was going to be able to determine that he

9     was actually Guatemalan, and that's when he decided to fess up.

08:43

10          The guidelines in this case -- he did testify, and

11     when he testified, he lied to this Court.  He testified that he

12     was abducted, yet there is no credible evidence in this case

13     that he was ever abducted, and it makes no sense that he would

14     have been abducted and put in a position to make it

08:43

15     inconvenient for the transportation of narcotics as opposed to

16     convenient.

17          As he indicated before, he had no role on the boat, so

18     his being placed on the boat -- and the best explanation he can

19     give is he was told by the narcotics traffickers that he should

08:43

20     go forward with the plan, listen to the captain.  The captain

21     wasn't instructing him to do anything.

22          In fact, the credible evidence in this case is that

23     the captain, when he realized he was going to be intercepted by

24     the United States Coast Guard, told everybody to claim that

08:44

25     they were under duress, and that's why they were involved in

this in the first place.  And that's the story that they stuck

with, a story that the government case took apart, dispelled,

and proved that he lied before this Court.

Credibly the defendant should have been given

08:44  obstruction of justice for the testimony that he provided to

this Court under oath.  He stood here, raised his hand, said he

was going to tell the whole truth and nothing but the truth,

but he lied.

I'm not suggesting the Court go to the high end of the

08:44  guidelines, but there is no reason this Court can really

fashion -- and I know the Court is -- wants to be fair in these

situations, but there's no reasonable argument that can be

fashioned in this for anything less than 235 months.  And I

think 235 months is fair under these conditions.  You can't say

08:45  you're going to deter this individual from again committing the

same crime that he never claims he committed in the first

place, never accepted responsibility for claiming in the first

place, and never offered any credible evidence of the other

roles involved in this case.  There's no deterrent for him, and

08:45  clearly providing him the same sentence he would receive when

it was mandatory at 120 months or whatever the Court would

otherwise fashion to someone who came forward and threw himself

on the sword and accepted responsibility for his actions would

have to be sentenced in these matters.

08:45  I'm strongly suggesting to the Court that the Court

1  consider the government's recommendation of 235 months in this

2  case, Your Honor.

3          THE COURT:  All right.  Thank you.  What is the

4  defense's position as an appropriate sentence?

08:46  5          THE DEFENSE:  May I approach, Judge.

6          THE COURT:  Yes.

7          THE DEFENSE:  Good morning, sir.  Your Honor, going

8  through this case, Your Honor heard testimony from several

9  agents as well as my client with regard to the nature of these

08:46 10  offenses.  You've heard two versions.  A huge disparity mostly

11  of how Mr. Cahvec got on the Dios Es Todo vessel.

12          Mr. Cahvec, as I just indicated to this Court, stands

13  by his story that he, in fact, was abducted after flying to

14  Cali, Colombia, with a round-trip ticket with Avianca Airlines.

08:46 15          On that note, Judge, to do so you heard from a

16  representative of Avianca, and it's well known that to travel

17  internationally you need a passport.  His passport was never

18  recovered, so there is competent evidence, at least

19  circumstantial evidence that someone did possess his passport.

08:46 20  It wasn't Mr. Cahvec.  It wasn't found anywhere on the vessel.

21  And that goes in furtherance of Mr. Cahvec being adducted,

22  being brought to a coastal town in Colombia that he had no idea

23  where he was, and being put on the Dios Es Todo.

24          From that point on, Judge, we have to look at roles.

08:47 25  And my focus here at sentencing is really to stress parity in

sentencing.  With regard to the two individuals that did change

their plea to guilty, one of which testified, one of which,

who, at first, from the point of view of the Coast Guard was,

in fact, the captain, answered questions.

After Zambrano did put the plug back in the boat that

was taking on water, questions were directed at Caicedo, who

did take the stand in this case and did testify that he

answered questions and was cooperating at that point in time

with regard to -- in concert with Zombrano where the load was

kept, in the fish hold.

At no time was Mr. Cahvec talking to them or accepting

responsibility with regard to knowledge or why he was there.

He, in fact, testified that he indicated that he was not there

voluntarily.  Zombrano, who did begin to have heart problems

while on the Diligence was brought to Costa Rica.

In no way, shape, or form, unlike what the Coast Guard

did in furtherance of the boarding protocol of the Dios Es

Todo, did not reach out to the consulate embassy, tried to

effectuate security through U.S. officials or local officials

or military officials of Costa Rica or engaging the Costa Rican

government to put security on the named captain of this vessel,

the leader, the organizer, the captain, the man who is

responsible for bringing this load of 1200-plus kilos of

cocaine allegedly into Guatemala or Mexico was never

competently defined by the evidence and let him walk out of

1 this civilian hospital where today he is no where to be found.

2      And a capeas, a warrant was not put on this individual

3 until about five -- I think it was about five weeks prior to

4 trial in this case.

08:49 5      Caicedo did take the stand.  He did receive a sentence

6 of 40 months, which is much lower than half of what the minimum

7 mandatory sentence is in this case.  Castillo, whose pictures

8 that we saw from his personal cell phone of him standing armed

9 in what appeared to be cocaine plant fields on -- in numerous

08:49 10 photos also around the panga vessels, as was used in this case,

11 did not testify and received 50 months.

12      The minimum mandatory in this case is 120 months.

13 That is more than double than each of these individuals

14 received.  I understand the bottom of the guidelines is 235

08:49 15 months.  And in my sentencing memorandum I indicated to this

16 Court my prior personal history in these type of cases, Title

17 46 matters; tried one approximately three years ago in front of

18 Judge Bloom.

19      I believe all of the individuals, mine definitely

08:50 20 received 188 months after trial, same charges, same two counts,

21 and there was a sustained guilty verdict.  There was a downward

22 departure based on similar grounds as in this matter dealing

23 with the nature of the offense, the personal characteristics,

24 which are typical -- and I hate to stereotype in cases where

08:50 25 we're seeing a lot of these Title 46 cases.  And these

1  individuals are coming from a number of countries, generally in

2  Central America.  Few are Colombian themselves, but the

3  recruitment is taking place in Central America.  And these are

4  destitute individuals.

08:50  5          In this case there is no competent evidence to rebut

6  the fact that my client comes from Guatemala, a farming town.

7  In fact, lives on a farm with his family and makes very little

8  money.  And there was evidence of a round-trip ticket being

9  purchased.  He indicated that he was going to Cali and nearby

08:51 10  towns, including Palmira to sightsee after the growing season

11  and to return with goods.  We saw photographs of his personal

12  items that he had claimed.

13          Mr. Caicedo did not indicate that those were not his

14  items.  The government had no evidence that the small sandals

08:51 15  that looked like a child's sandals were not his and other forms

16  of clothing also, with tags still on them which showed that

17  Mr. Cahvec was, in fact, shopping.

18          Judge, I just had a case, Title 46, where the

19  individuals debriefed, three individuals in front of Judge

08:51 20  King.  Judge King ratified, with the government's 5K1, a

21  sentence of 80 months across the board.  And though there was a

22  debrief, I don't believe the assistance in any way led to any

23  investigations, let alone an arrest.

24          The government is saying to, Your Honor, that if these

08:52 25  individuals came before the Court, fell on the sword, are

1   receiving a minimum mandatory of 120 months, that is not my

2   personal experience.  And I have an active case right now with

3   their office.

4            I'm finding that if they cooperate and debrief, even

08:52  5   with nothing substantially coming from that debrief, they're

6   receiving 5K1s below what would be far below the guidelines and

7   below the minimum mandatory in this case.

8            So in good faith I request that Your Honor consider

9   120 months in this case which is more than double both of the

08:52 10   individuals who are on that vessel with Mr. Cahvec, and

11   Mr. Cahvec, other than having coordinates in his wallet, there

12   was no competent evidence to show that he was a leader, an

13   organizer, or in any way should be held more so accountable for

14   relevant conduct on that boat, if, in fact, as we saw the jury

08:53 15   not giving full weight and finding him not guilty as a result

16   of the alleged duress, but keeping in mind the relevant conduct

17   if Your Honor feels that he was on that boat voluntarily as

18   most of these individuals who are changing their pleas and

19   fully debriefing and accepting responsibility are, that his

08:53 20   conduct was not more egregious in any way or more aggravating

21   in any way.

22            Respectfully we request a sentence at the minimum

23   mandatory level up to -- and I have to use Judge Bloom's

24   sentence after trial as a point also, which was 188 months.  So

08:53 25   it would be from 10 to 15 years.  And we just pray that Your

1   Honor have mercy on this individual in light of the

2   circumstances and find that there should be parity in these

3   type of cases and sentences.  Thank you.

4        **THE COURT:**  All right.  Mr. Cahvec, you have the right

08:54  5   to make a statement to me before I impose sentence.  You don't

6   have to say anything, but if you would like to say something,

7   this is your opportunity.

8        **THE DEFENSE:**  Would you like him to stay seated,

9   Judge, or at the counsel table or come forward.

08:54  10        **THE COURT:**  He can stay at the table.

11        **THE DEFENDANT:**  Before I say anything else, Your

12   Honor, good morning.  We are thankful to God for giving us this

13   day of life.  What I am asking you, Your Honor, is to have

14   mercy on me because of all these accusations against me,

08:55  15   because these people that are accusing me, Your Honor, I do not

16   know them, and because of all of these accusations today, Your

17   Honor, Your Honor, I was forced just like my lawyer was telling

18   you.

19        My dream, Your Honor, was to go to Cali and to buy

08:55  20   clothing for my children taking advantage of the trip, but

21   that's not the way it worked out, Your Honor.  This accident

22   happened to me and I was -- I was kidnapped, Your Honor, and

23   this thing that happened to me, I do not wish it on anyone.

24        Just like everyone is here today, we have children

08:56  25   we do not wish anything like this to happen because it is not

08:57

fair, Your Honor, for a tourist who is over there to be kidnapped by the hand of these people, but the U.S. law, I respect it, but in my case they were never able to investigate simply what it was that happened, because they themselves come and get me and say you are responsible and that's it; that's all.  Because, Your Honor, I have the proof.  I have clothing that I had bought for my wife, a pair of flip flops, and shoes for my children.

08:58

At no point in time have I hidden, like Mr. Prosecutor is saying that I was denying my information.  No.  And they also didn't present the video where you can hear the voice where I am denying it, when they are recording the video.  They accuse me with words saying that I denied it, but I didn't do that at any point in time, Your Honor.

08:58

And when they approached me, they spoke to me in English.  And I told them that I was kidnapped in Cali, but they're lying here, and they are saying that I am lying.  And they accuse me of conspiring here in the United States, but I have never come here, Your Honor, much less bringing these

08:59

things that they accused me of having brought here, but I didn't know anything about this, Your Honor.

And it is not fair for me to receive a sentence today, Your Honor, without me even knowing what was there in these causes.  I was kidnapped, Your Honor.  And so what I am asking

09:00

you, Your Honor, is for you to have mercy on me because I have

1    five children, and they depend on me.

2         And I have been here for so long, Your Honor, in

3    prison, and they are over there.  And who is going to feed them

4    in these years that are coming?  They're going to study.

09:00  5    Because I am the one that feeds them, Your Honor, that supports

6    them.  Because my work is in agriculture, and that's what I do

7    my country.  That is all, Your Honor.  God bless you.

8         **THE COURT:**  All right.  Thank you.  The Court has

9    considered the statements of the parties, the presentence

09:01 10   report which contains the advisory guidelines, as well as the

11   statutory factors set forth in 18 United States Code Section

12   3553(a).

13        Having previously determined that the total offense

14   level is level 38 with a criminal history category 1, and an

09:01 15   advisory guideline range of 235 to 293 months, I first find the

16   defendant is not able to pay a fine, so I will not impose a

17   fine.

18        As a starting point, I think it's important to note

19   that the amount of cocaine involved in this case, a thousand

09:01 20   kilograms, is a significant amount of cocaine, even by South

21   Florida standards, and more than anybody who participates in

22   these kind of crimes gets a significant sentence.

23        I do believe I have to also impose a sentence that

24   avoids any unwarranted sentencing disparities either among

09:02 25   codefendants in the case or other similarly-situated people in

09:02

09:02

09:03

09:03

09:03

1   other cases, but I don't think Mr. Cahvec is

2   similarly-situated, certainly not similarly-situated to the

3   codefendants who truthfully cooperated with the government,

4   showing remorse, making it less likely that they'll reoffend,

5   and doing everything they can to ameliorate the harm that

6   they've caused by their conduct in the case.

7        I sentence people in these kind of cases very often,

8   and they're always very difficult for me because you're

9   starting out with a huge amount of cocaine, a huge sentencing

10  guideline, and most of the people are these

11  completely-unsophisticated, desperately-poor fishermen or

12  peasants who are recruited to participate in these matters.

13       Mr. Cahvec does not fit that mode.  He was a

14  successful farmer by Guatemalan standards.  I don't know by

15  American standards, but he certainly could afford to go on what

16  he described was a pleasure trip to Cali to buy clothing for

17  his family and to also stay for some extra days for a vacation.

18       He was greatly involved in the planning and logistics

19  and communications in this case, unlike a lot of other people.

20  So I don't think he is similarly situated to the codefendants

21  in this case or even other defendants in these kind of cases.

22       But most importantly, we have a great country here,

23  Mr. Cahvec, and we provide a lot of constitutional rights to

24  every person who is charged with a crime, not just citizens --

25  every person.  And you had the right to have two excellent

1  attorneys assist you in the case.  You have the right to be

2  presumed innocent.  You have the right to make the government

3  prove the case against you beyond a reasonable doubt.

4       What you don't have the right to do is to concoct a

09:04  5  very-detailed fantasy to avoid your responsibility in this case

6  and then to testify in front of the jury to try and fool them.

7       And I think that certainly if the PSI had included a

8  two-level increase for obstruction of justice, that would have

9  been warranted based upon your testimony in the case.  And had

09:04  10  you received that increase, your guidelines would have been 292

11  to 365 months.

12       So in my mind, there was actually a two-level increase

13  under the guidelines or a variance above the guidelines because

14  of your untruthfulness.  To me, that's the starting point that

09:04  15  in my mind of where your sentence should be calculated.  I do

16  believe the fact that you have no prior record, and that your

17  family responsibilities are somewhat mitigating.

18       So in light of all of those circumstances, it's the

19  judgment of the Court that the defendant is committed to the

09:05  20  Bureau of Prisons to be imprisoned for concurrent terms of 240

21  months as to each of counts 1 and 2.

22       Upon release from imprisonment, he'll be placed on

23  supervised release for concurrent terms of five years on each

24  of counts 1 and 2.

09:05  25       Within 72 hours of release from the custody of the

1  Bureau of Prisons, you will report in person to the U.S.

2  Probation Office in the district where he's released.

3        While on supervised release, in addition to the

4  standard and statutory conditions of supervised release, the

09:05  5  following special conditions will apply.

6        He must surrender to immigration for removal after

7  imprisonment.  And the unpaid restitution fines or special

8  assessment conditions will apply, and those are more

9  specifically set forth in part G of the presentence report.

09:06  10        Defendant must also pay a special assessment of $100

11  on each count for a total of $200 payable immediately to the

12  United States.

13        So the total sentence is 240 months in prison, five

14  years supervised release, and a $200 special assessment.

09:06  15        Now that sentence has been imposed, does the defendant

16  or his counsel object to the Court's findings of fact or the

17  manner in which sentence was pronounced or any of the Court's

18  sentencing rulings.

19        **THE DEFENSE:**  No, Your Honor.

09:06  20        **THE COURT:**  All right.  Mr. Cahvec, you have the right

21  to appeal both the conviction and the sentence that was

22  imposed; however, any notice of appeal must be filed within 14

23  days after entry of the judgment.  If you are unable to pay the

24  cost of an appeal, you may apply for leave to appeal in forma

09:06  25  pauperis which means you can appeal without prepaying any fees

1   or costs.

2           THE DEFENSE:  Judge, just to clarify.

3           THE COURT:  Yes?

4           THE DEFENSE:  With regard to supervised release, he is

09:07  5   to report with regard to deportation.  Would the supervised

6   release be effectuated in such a way as remotely from his home

7   country on a type of mail-in reporting?  How would that be

8   effectuated?

9           THE COURT:  When he is removed from the United States,

09:07 10   then his supervised release will become non-reporting.

11          THE DEFENSE:  Judge, the other issue is this.  I did

12   object based upon the technical sentencing as far as us finding

13   no objection there.

14          But as far as the facts that Your Honor is relying on

09:07 15   based upon the evidence gleaned from the trial, we do object

16   and we do preserve the objections during trial for purposes of

17   appeal.

18          THE COURT:  Okay.  All right.  Anything further from

19   either the government or the defense?

09:07 20          THE GOVERNMENT:  No, sir.

21          THE DEFENSE:  No, sir.

22          THE COURT:  Good luck to you, Mr. Cahvec.

23

24          (Thereupon, the above hearing was concluded.)

25



1                    *              *              *

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        **C E R T I F I C A T E**

2

3           I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

7       12/07/2017

8    _____       _____

9    DATE COMPLETED            GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25